UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILIP G. STEPHENSON,<br><br>  Plaintiff,<br><br>  v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of the Social<br>Security Administration,<br><br>  Defendant. | Case No. ED CV 05-227-PJW<br><br>MEMORANDUM OPINION AND ORDER |

## I.

## INTRODUCTION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), challenging the decision by Defendant Social Security Administration ("the Agency") denying him Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits. He asks that the Court reverse the Agency's decision and remand the case to the Agency for the calculation of and awarding of benefits. Alternatively, he asks the Court to reverse the Agency's decision and remand the case for further proceedings.

The Agency concedes that the ALJ erred in his decision and agrees that remand is warranted. The Agency argues, however, that a reversal

with instructions to award benefits is not appropriate in this case. After reviewing the record and for the reasons discussed below, the decision of the Agency is reversed and the case is remanded for further proceedings consistent with this Opinion.

## II.
## SUMMARY OF FACTS AND PROCEEDINGS

Plaintiff was, at all times relevant to his application, an individual of "advanced age."[1] (AR 14, 212.) He has a high school education and some college. (AR 14, 26, 78, 212.) His past relevant work was as a service representative for a pest control company. (AR 14, 332.) He also worked in production control for a circuit board manufacturer. (AR 80.)

In January 2000, Plaintiff applied for DIB and SSI benefits, alleging he had been unable to work since January 1, 1999 (AR 59, 73), due to shortness of breath (AR 73). Following denials of his claims at the initial and reconsideration levels (AR 41-44, 46-50), he requested a hearing before an administrative law judge ("ALJ") (AR 51).

In July 2001, the ALJ held a hearing. (AR 25-38.) Plaintiff appeared with counsel and testified. By decision dated July 25, 2001, the ALJ denied benefits. (AR 12-17.) Following denial of review by the Appeals Council, Plaintiff filed a complaint in the district court seeking judicial review. While the action was pending, the parties stipulated to a remand and the matter was remanded for a new hearing. (AR at 219-20.)

---

[1] An individual age fifty-five or older is considered a person of "advanced age." 20 C.F.R. §§ 404.1563(e), 416.963(e).

On remand, the same ALJ held a second hearing. (AR 325-34.) Plaintiff appeared with counsel, but did not testify. A medical expert and a vocational expert, however, did. The ALJ again denied Plaintiff's claims. (AR 210-15.)

Following the five-step sequential evaluation procedure outlined in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ concluded, at step one, that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. At step two, he found that Plaintiff suffers from a severe impairment of the respiratory system. (AR 212.) At step three, the ALJ found that Plaintiff did not have a Listed impairment or an impairment equal to a Listed impairment. At step four, the ALJ determined that Plaintiff retained the residual functional capacity to perform medium work, concluding that Plaintiff could return to his past relevant work as a pest control service representative (as Plaintiff had described the job). (AR 214.) The ALJ proceeded to step five--though he did not have to-- and found that there was other work in the national economy which Plaintiff could also perform, relying on the "Grids."[2] Plaintiff requested that the Appeals Council review the ALJ's decision, but the Appeals Counsel denied Plaintiff's request for review. (AR 201-03.) Plaintiff then filed an action in this Court seeking review.

---

[2] The Grids set forth criteria to aid the ALJ in reaching a conclusion as to whether an individual is or is not disabled. They consist of three tables, each representing a different exertional capacity: sedentary, light, and medium work. The Grids also take into consideration a claimant's age, education, and work experience. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2.

## III.

## STANDARD OF REVIEW

The Court must sustain the findings of the Commissioner unless: (a) they are not supported by substantial evidence in the record as a whole; or (b) the Commissioner applied an improper legal standard. *See* 42 U.S.C. 405(g); *Gordon v. Secretary of Health and Human Services*, 803 F.2d 1071, 1072 (9th Cir. 1986). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).

## IV.

## ANALYSIS

Plaintiff contends that the ALJ erred in finding:

1. Plaintiff's impairment did not meet Listing 3.02A;
2. Plaintiff's failure to quit smoking was a reason for finding him not credible.

He asks the Court to reverse the ALJ's decision and remand for an award of benefits. Alternatively, he asks the Court to remand the case for further proceedings. The Agency concedes that the ALJ erred in evaluating Plaintiff's pulmonary impairment (Listing 3.02A) and recommends that the case be remanded. For the following reasons, the Court concludes that remand is appropriate here.

A.  <u>Listing 3.02A</u>

To meet a Listed impairment, a claimant must establish that he meets each characteristic of an impairment. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). Plaintiff claims here that he meets Listing 3.02A for chronic obstructive pulmonary disease. In order to meet this Listing, a claimant (of Plaintiff's height) must produce

1  test results of pulmonary function studies establishing that his
2  forced expiratory volume ("FEV1") is 1.35 or less.  *See* § 3.02A,
3  Appendix 1, Subpart P, 20 C.F.R. Part 404.  Plaintiff submitted test
4  results showing that, on February 25, 2000, Plaintiff's FEV1 was 0.91.
5  (AR 119.)  On March 10, 2000, it was 0.93.  (AR 114.)  On September
6  20, 2000, it was 0.89.  (AR 149.)  And on September 21, 2000, it was
7  1.08, pre-bronchodilator, and 1.25, post-bronchodilator.  (AR 174.)
8  Plaintiff argues that, based on these test results, he met Listing
9  3.02A and the ALJ erred when he failed to make that finding.
10      The Agency disagrees.  It points out that, under the regulations,
11 in order for the pulmonary function test results to be considered
12 valid, the testing must be conducted under certain conditions, none of
13 which was met in this case.  *See* 20 C.F.R. § 3.00E.  For example, the
14 regulations require:
15      The reported one-second [FEV1] and forced vital capacity
16      (FVC) should represent the largest of at least three
17      satisfactory forced expiratory maneuvers.  Two of the
18      satisfactory spirograms should be reproducible for both
19      pre-bronchodilator tests and, if indicated,
20      post-bronchodilator tests.
21 *Id.*
22      In Plaintiff's case, except for the September 21, 2000 testing,
23 there is no indication that Plaintiff was administered bronchodilators
24 as part of the testing.  (AR 114, 119, 149, 176.)  The regulations
25 also require that the person administering the test include a
26 statement "of the individual's ability to understand directions as
27 well as his or her effort and cooperation in performing the pulmonary
28 function tests."  *See* 20 C.F.R. § 3.00E.  No such statements accompany

any of the pulmonary function studies submitted by Plaintiff. Accordingly, based on this record, neither the ALJ nor the Court can determine whether Plaintiff's respiratory condition satisfies the criteria of Listing 3.02A. As such, remand for further proceedings is required so that the record can be supplemented, allowing the ALJ to determine whether the testing was done in compliance with the regulations. *See Higgins v. Callahan*, 983 F. Supp. 865, 870-71 (E.D. Mo. 1997); *see also Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990)("Where the Secretary is in a better position than this court to evaluate the evidence, remand is appropriate"). If the testing complied with the regulations, the test results should be accepted and, presumably, Plaintiff will be found to meet Listing 3.02A. If not, further testing may be required to make this determination.

Finally, this Court is aware that it has the discretion to reverse that ALJ's decision and remand the case to the Agency for a calculation of and award of benefits. The Court concludes that reversal is not appropriate here, however. Plaintiff had the burden of establishing that he met Listing 3.02A and he failed to do so when he submitted test results which did not comply with the standards set forth in the regulations. The Court is not convinced that the test results are valid under § 3.00E and remand is necessary to develop the record to determine whether they are.

B. <u>Credibility</u>

The ALJ found that Plaintiff was not credible. Plaintiff contends that the ALJ's primary basis for finding him not credible was his refusal to stop smoking. Acknowledging that the Ninth Circuit has not spoken precisely on the issue, he cites various out-of-circuit cases for the proposition that a claimant's failure to quit smoking,

"even in the face of medical advice to do so," is an inappropriate basis alone on which to find him not credible. (Joint Stipulation 9.)

The Agency, on the other hand, argues that Plaintiff's failure to quit smoking reflects his lifestyle choices, an appropriate basis to doubt a claimant's subjective complaints. (Joint Stipulation 11, citing *Osenbrock v. Apfel*, 240 F.3d 1157, 1166 (9th Cir. 2001).) Moreover, according to the Agency, the ALJ properly recited other reasons for finding Plaintiff not credible in his first decision--which was specifically incorporated by reference into his second decision--including lack of treatment for part of the relevant period, inconsistent statements throughout the treatment period, and daily activities that contradict his claims of infirmity. (Joint Stipulation 11.) For the following reasons, the Court concludes that on remand a new ALJ should be assigned to the case and consider anew whether Plaintiff is credible.[3]

Although it may be proper in an appropriate case for an ALJ to conclude that the claimant's refusal to quit smoking in the face of his doctor's advice to quit is evidence that the claimant is lying, it is a very tenuous ground to rely on. Cigarette smoking is a very difficult habit to break. *See Soliman v. Philip Morris*, *Inc.*, 311 F.3d 966, 973 (9th Cir. 2002)(noting the hearing testimony of FDA Commissioner David Kessler about the addictive properties of nicotine and his observation "that more than 15 million Americans try to quit

---

[3] The Court has been informed by Agency counsel in previous cases that the Agency routinely assigns cases that have been remanded more than once to a new ALJ. The Court assumes that the Agency would have followed this practice in this case. But to insure that a new ALJ be assigned, the Court orders the Agency to do so. *See Reed v. Massanari*, 270 F.3d 838, 845 (9th Cir. 2001)(authorizing courts to remand social security case to new ALJ in appropriate circumstances).

each year and fail"). It is often difficult to conclude, therefore, that a claimant's failure to quit, in and of itself, establishes that he is not credible. Certainly, some people simply elect not to quit smoking, despite the harmful effects on their body, and should not be believed when they claim, for example, that they cannot walk very far because they have trouble breathing. On the other hand, others, who testify to the same difficulty walking, may genuinely want to quit smoking but are unable to. It seems the task of separating the first group from the second is virtually impossible. *See Shramek v. Apfel*, 226 F.3d 809, 812-13 (7th Cir. 2000). As the Seventh Circuit explained in *Shramek*:

> Given the addictive nature of smoking, the failure to quit is as likely attributable to factors unrelated to the effect of smoking on a person's health. One does not need to look far to see persons with emphysema or lung cancer--directly caused by smoking--who continue to smoke, not because they do not suffer gravely from the disease, but because other factors such as the addictive nature of the product impacts their ability to stop. This is an unreliable basis on which to rest a credibility determination.

*Id.* For these reasons, a factfinder walks on very thin ice when he or she bases a credibility determination solely (or largely) on the claimant's failure to quit smoking.

As to the ALJ's other reasons for rejecting the Plaintiff's credibility in this case, the Court finds them marginal, at best. The ALJ concluded that Plaintiff's daily activities belie his claims of significant limitations. Plaintiff testified that he tried to maintain flower beds at his home and did chores such as vacuuming. He

1 explained, however, that when he performed these chores he was
2 required to limit the amount of time he exerted himself to ten
3 minutes, and then sit down and rest for ten minutes to catch his
4 breath. (AR 31.) While his ability to perform these chores may
5 indicate that he is not "utterly incapacitated," the Social Security
6 Act does not require him to be so in order to be disabled. *Fair v.*
7 *Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

8     The ALJ concluded that Plaintiff's lack of treatment prior to
9 February 2000 indicated that his claims that he was impaired should
10 not be believed. (AR 214.) But this overlooks the fact that
11 Plaintiff required ongoing treatment after February 2000, with
12 increasing amounts of medication, including intermittent courses of
13 Prednisone, and episodes of exacerbation requiring hospitalization.[4]
14 (AR 260, 262, 266, 306.) Thus, while the lack of treatment prior to
15 2000 may be probative for that period of time, it is not probative for
16 the period thereafter.[5]

17     The ALJ also relied on Plaintiff's allegedly inconsistent
18 statements as a basis for finding him not credible. For example, the
19 ALJ questioned Plaintiff's claim in January 2001, that he "was 'just
20 about totally a non-smoker,'" because Plaintiff "previously made the

---

[4] The ALJ cited the lack of hospitalization in his initial decision as support for his negative credibility finding. (AR 15.)

[5] That Plaintiff alleged an onset of January 1999, which the ALJ considered to be a "pure guess," also does not go to Plaintiff's credibility. Plaintiff has a history of chronic obstructive pulmonary disease even prior to his alleged onset date. (*See* AR 272.) Plaintiff was merely providing an estimate of when his disease had progressed to what he considered a disabling level. *See* SSR 83-20 (recognizing the difficulty in establishing an onset of disabilities of non-traumatic origin especially in cases of slowly progressive impairments).

1  same untrue assertions." (AR 15, 165.) A review of Plaintiff's
2  statements, however, does not indicate any significant inconsistency.
3  As noted by the ALJ, Plaintiff had also indicated that he was "almost
4  off cigarettes" in March 2000, which, to him, meant that he was
5  smoking less than half a pack a day. (AR 114.) A half pack was also
6  what he was smoking in September 2000, and in May 2001. (AR 149,
7  181.) While one may quarrel with Plaintiff's definition of being
8  "almost off cigarettes," his estimate of the amounts he was smoking
9  does not establish that Plaintiff's statements were inconsistent.

10  The ALJ also pointed to the circumstances surrounding Plaintiff's
11  withdrawal from the workforce and his failure to apply for disability
12  at that time as casting doubt on his credibility. (AR 16, 214.) But
13  Plaintiff candidly admitted from the outset that he stopped working in
14  1997 because he lost his drivers license. He never claimed to be
15  disabled at that time. (AR 73.) Not claiming disability, he was not
16  entitled to receive state disability benefits. (AR 16.) These
17  factors, therefore, have little bearing on the credibility of
18  Plaintiff's later complaints.

19  The ALJ's characterization of the medical evidence is even more
20  problematic. The ALJ points to various entries in the record as
21  evidence contradicting Plaintiff's allegations. For example, he
22  refers to the record as indicating that Plaintiff was "doing well" and
23  that his pulmonary disease "was controlled." (AR 15, 213.) However,
24  the record as a whole does not support the inference that these
25  entries prove that Plaintiff did not have a disabling impairment. To
26  the contrary, even when Plaintiff was reported to be doing well, he
27  still complained of shortness of breath on exertion and findings
28  included rhonchi and poor air movement. (AR 181, 182, 259, 260, 262,

312, 257.)  The error in relying on these statements is particularly notable when, despite self-reports of "feeling well," Plaintiff was observed to be cachectic, i.e., wasting away.  (AR 306.)  Thus, viewing the entire record before this Court, the ALJ's reliance on isolated notations that Plaintiff was doing well is misplaced.  *See e.g. Rhodes v. Schweiker*, 660 F.2d 722, 723 (9th Cir. 1981)("On the record, viewed as a whole, the ALJ's primary reliance on allegations of improvement in [the claimant's] condition is misplaced").

The ALJ also noted that, in December 2000, Plaintiff discontinued his inhalers because he felt better, suggesting that this was evidence of non-compliance as well as evidence belying a disabling level of impairment.  (AR 214.)  The Court disagrees.  Other than a reported misunderstanding concerning the proper dosage of his measured dose inhalers (AR 181), there is no evidence of non-compliance with Plaintiff's breathing medication, and post-December 2000 treatment entries do not support any suggestion that Plaintiff was actually doing well.  He reported shortness of breath walking normally, and he was unable to do anything exertional because it caused him to be "winded."  (AR 165.)  The record is replete with ongoing complaints of decreased exercise tolerance and shortness of breath with exertion. (AR 114, 122, 146, 149, 165, 170, 181, 182, 266, 303, 312.)

The ALJ implied that the objective evidence and medical opinion contradict Plaintiff's complaints of a disabling impairment.  (AR 15, 213.)  This is simply not accurate.  The objective testing, as discussed above, indicates that Plaintiff has a listing-level pulmonary impairment.  Similarly, the ALJ's reliance on the statement of Dr. Jun Ta Huang in April 2004--that Plaintiff currently had "low to nil symptoms"--is misplaced in light of Dr. Huang's diagnoses of

stable pulmonary disease and possible history of congestive heart failure, which do not suggest that Plaintiff's status was "normal" in any other sense than that Plaintiff's recent exacerbation had resolved and that he had returned to baseline. (AR 310.)

The ALJ especially disbelieved Plaintiff's allegations concerning his inability to walk more than a quarter mile with rests. (AR 16.) The ALJ found that this self-assessment is unsupported by the objective record, citing to Plaintiff's doctor's advice that he should try to walk two miles four days a week. (AR 146.) The ALJ concluded that, if Plaintiff was told by his doctor to walk this much, he must be able to do so. This conclusion does not follow. In the first place, Plaintiff was told by his doctor that he should work up to this level, not that he was capable of doing it. (AR 170.) Secondly, subsequent treatment notes indicate little exercise tolerance (AR 165), and there is no further recommendation that he strive to walk two miles, four times a week. (AR 181, 182, 256-62.)

## VI.

## CONCLUSION

For these reasons, the case is remanded to the Agency for further proceedings consistent with this Opinion. On remand, a different ALJ should be assigned to the case and he or she should reassess whether Plaintiff's condition meets or equals Listing 3.02A. If the matter cannot be decided at step three, the ALJ should make new credibility findings. New credibility findings, in turn, may necessitate a reassessment of Plaintiff's residual functional capacity (SSR 96-8p) and new step-four and step-five determinations. A vocational expert should again be called. Finally, the ALJ's decision should not incorporate by reference the two previous decisions by the ALJ but

1  should stand on its own.  This not only allows the parties to clearly
2  understand the bases for the ALJ's ruling, it also allows the Court to
3  determine what they are, should further review become necessary.
4       IT IS SO ORDERED.
5  DATED:  August 3, 2006.


                                    /s/
                                    PATRICK J. WALSH
                                    UNITED STATES MAGISTRATE JUDGE

28 S:\PJW\Cases-Soc Sec\STEPHENSON, P 227\Memo Opinion.wpd